```
            IN THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF GEORGIA
                       ATLANTA DIVISION
```

KENDRA MICHELLE WILLIAMS,

        Plaintiff,

v.                               CIVIL ACTION NO.
                                  1:10-cv-03736-JEC

DR. HENRY JOEL SIGELSON,
et al.,

        Defendants.

## ORDER & OPINION

This case is presently before the Court on the Magistrate Judge's Final Report and Recommendation and Order ("R&R") [4] recommending dismissal of plaintiff's Amended Complaint [1-3] (hereinafter the "Complaint"). The Court has reviewed the R&R [4], as well as plaintiff's Objections [7], and finds the magistrate judge's determination to be well-founded. The Court thus **DISMISSES with prejudice** plaintiff's federal claims and **DISMISSES without prejudice** any state law claims.

I.    **PLAINTIFF'S COMPLAINT**

The Court has reviewed plaintiff's Complaint [1-3]. The R&R [4] accurately sets out the relevant facts:

> Plaintiff contends that she sought treatment at the Wellstar Douglas Hospital emergency room for a migraine headache. After being triaged by a nurse, seen briefly by

> a doctor, and waiting for several hours, Plaintiff alleges that hospital personnel blocked her from leaving the facility when she decided to leave the hospital with her adult son and seek treatment elsewhere. Plaintiff alleges that she was classified as "mentally ill," and security officers and police officers restrained her in the hospital against her will by placing her on an unwarranted psychiatric hold, using excessive physical force against her causing her various physical injuries, and handcuffing her to the hospital bed for several hours. Plaintiff alleges that she was charged criminally for the incident, was out of work for a month due to her injuries, and was fired from her position at another Wellstar location in retaliation. She also alleges that Wellstar Douglas Hospital altered her medical records, tampered with video surveillance evidence from the date of the incident, and fraudulently billed her insurance company for treatment she did not receive.

(R&R [4] at 3-4.)

Plaintiff raises federal constitutional and statutory claims against the hospital, as well as several state law claims for fraud and negligence. Plaintiff filed an amended complaint eleven days after her first complaint. (Am. Compl. [1-3].) Plaintiff does not name any police officers or state officials as defendants. The R&R recommends that plaintiff's action be dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

II. **PLAINTIFF'S § 1983 CLAIMS**

A claim is frivolous if "it lacks an arguable basis either in law or in fact," *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), or "if the plaintiff's realistic chances of ultimate success are slight." *Clark v. State of Ga. Pardons and Paroles Bd.*, 915 F.2d

2

636, 639 (11th Cir. 1990)(internal quotations omitted). A complaint fails to state a claim when it does not include "enough factual matter (taken as true)" to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level," and the complaint "must contain something more...than...a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.*

Plaintiff's first six claims are either constitutional claims or are filed under 42 U.S.C. § 1983, which means plaintiff must allege that an act or omission was committed by a person acting under color of state law. *See Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995). Yet plaintiff does not name any state actor as a defendant, and she does not allege that the hospital employees were acting under the color of state law. (Am. Compl. [1-3] at 1 (listing hospital and hospital employees as defendants).) Thus, plaintiff's claims (1)-(6) are dismissed as frivolous. *See Johnson v. Health Central Hosp.*, 208 Fed. App'x 797, 802 (11th Cir. 2006)(affirming finding of frivolity on § 1983 claim against hospital, where plaintiff named no state actor).

In her objections to the R&R, plaintiff asserts that "[i]n [her] original and amended complaint [she] plaintiff mentioned additionally

3

parties will be added/deleted [sic]." (Obj. [7] at 4.) Plaintiff explained the reason for this omission was that she did not want to lose her right to sue under the applicable statute of limitations. (*Id.*) Nevertheless, plaintiff did not include with her Objections an amended complaint naming state officers. Further, in the more than two years since she filed her objections, she has yet to submit an updated complaint. Indeed, the Amended Complaint that she filed shortly before her objections likewise named no state actions. Accordingly, plaintiff's § 1983 claims are **dismissed**.

### III. <u>PLAINTIFF'S EMTALA CLAIM</u>

Plaintiff also includes a claim for "violation of EMTALA under Social Security Act 1867 [sic]." The Emergency Medical Treatment and Active Labor Act (EMTALA) is a 1986 law by which Congress sought to prevent "patient dumping," whereby a hospital transfers an indigent patient to another hospital without evaluation or treatment. *See generally Harry v. Marchant*, 291 F.3d 767, 768 (11th Cir. 2002). "Under EMTALA, when an individual presents for treatment at the emergency department of a hospital, the hospital must provide an appropriate medical screening to determine whether an emergency medical condition exists. If an emergency medical condition is determined to exist, the hospital ordinarily must provide stabilization treatment before transferring the patient." *Id.* "An EMTALA violation thus arises when a hospital either (1) fails to

4

adequately screen a patient, or (2) discharges or transfers the patient without first stabilizing his emergency medical condition."[1] *Johnson*, 208 Fed. App'x at 801.  An appropriate medical screening examination is not defined by the Act, but the Eleventh Circuit has held that a screening is "appropriate" if it fits within the criteria the hospital uses for all patients. *Holcomb v. Monahan*, 30 F.3d 116, 117 (11th Cir. 1994).

Plaintiff mentions the EMTALA only sporadically throughout her 274-paragraph, 64-page amended complaint, but from what the Court can discern, plaintiff's argument is that the hospital violated her rights under EMTALA by not performing an appropriate medical screening exam. (Am. Compl. [1-3] at ¶¶ 26, 191.)  This may mean that either (1) the hospital did not perform a medical screening exam on Williams or (2) the hospital did conduct the screening exam, but it did so negligently, reaching an incorrect diagnosis.

Under either theory, plaintiff's EMTALA claim is frivolous. Plaintiff states clearly that she "was unhappy with the lack of care that she received and made competent decision to leave the hospital and seek treatment elsewhere. [sic]," (*id.* at ¶ 28), after which

---

[1] Plaintiff does not allege that the defendants transferred her to another hospital without first giving her adequate treatment. Instead, she complains that, having determined that plaintiff was suffering from some sort of mental breakdown, the hospital would not let her leave.

5

plaintiff attempted to leave the hospital but was restrained by police officers and hospital staff. Thus, according to plaintiff's version of events, she wanted to leave the hospital and thereby cut short whatever screening the hospital employees[2] were attempting to provide.

The second theory--that the hospital did conduct a medical screening, but did so negligently--also must fail. According to plaintiff's complaint, the hospital's evaluation of plaintiff led its employees to believe she was mentally unstable. Even assuming that the hospital's employees reached an inaccurate conclusion,[3] plaintiff cannot make out a claim under EMTALA by asserting merely that she disagrees with the result of the screening exam. Instead, under EMTALA, plaintiff must show that she was provided with an inadequate screening compared to that received by other patients. *See Holcomb*, 30 F.3d at 117 (noting that even though EMTALA does not define what is an "appropriate" medical screening, "this language only requires

---

[2] A plaintiff may bring a claim under EMTALA against a hospital, but not against individual employees of the hospital. *Lane v. Calhoun-Liberty Cnty. Hosp. Ass'n Inc.*, 846 F. Supp. 1543, 1548 (N.D. Fla. 1994)("Although the EMTALA makes both hospitals and physicians liable for civil penalties, the private remedy is limited to claims against 'the participating hospital.'"). Thus, to the extent Williams brings an EMTALA claim against physicians or hospital staff, her claim may also be dismissed on this basis.

[3] Plaintiff clearly disagrees with the hospital's conclusion that she was mentally unstable. (*E.g.*, Am. Compl. [1-3] at ¶ 21.)

6

a hospital to provide indigent patients with a medical screening similar to one which they would provide any other patient;" and EMTALA "is not designed to redress a negligent diagnosis by the hospital").[4]

While plaintiff may have a state law malpractice claim if the hospital's actions were negligent, she does not have a claim under the EMTALA. *See id.* (EMTALA does not create federal malpractice action).

## CONCLUSION

Because plaintiff's federal claims are frivolous and the Court lacks subject matter jurisdiction to decide any state law claims that

---

[4] This portion of *Holcomb* suggests that a patient may sue a hospital for providing an inadequate medical screening under EMTALA only if the patient is indigent, and the plaintiff here seems to have had health insurance (which, according to her, defendants fraudulently billed). (Am. Compl. [1-3] at ¶ 53.)  However, the broad language of EMTALA appears to require a hospital to provide an appropriate medical screening to all patients, not just indigent ones. 42 U.S.C. § 1395dd(a)(medical screening requirement applies to "any individual [who] comes to the emergency department"). At least one commentator has noted, the statutory text is not entirely consistent with *Holcomb*. Scott B. Smith, The Critical Condition Of The Emergency Medical Treatment And Active Labor Act: *A Proposed Amendment To The Act After In The Matter Of Baby K*, 48 VAND. L. REV. 1491, 1519, n.129 (1995)(noting that *Holcomb* is "straddling the fence" on the issue of whether the appropriate screening requirement applies to all patients or just indigent ones).

This Court need not resolve the issue here because, even if EMTALA's appropriate medical screening requirement did apply to Williams, she has not alleged in what way the hospital's screening was below the standards afforded other patients.

plaintiff may have brought, plaintiff's federal claims are **DISMISSED with prejudice**.  To the extent that she has alleged state law claims, they are **DISMISSED without prejudice**.

SO ORDERED, this 29th day of JULY, 2013.


/s/ Julie E. Carnes
JULIE E. CARNES
CHIEF UNITED STATES DISTRICT JUDGE